(8 App. Div. 112)

### KING v. HOLLAND TRUST CO. et al.

(Supreme Court, Appellate Division, Third Department. July 7, 1896.)

FRAUDULENT CONVEYANCES—PURCHASER FOR VALUE—NOTICE OF FRAUD.

    A purchaser for value is not chargeable with constructive notice that the conveyance to him was made with intent to defraud creditors, but actual notice of fraud is required to affect his title.

Appeal from special term, Albany county.

Action by Barrington King, as receiver in supplementary proceedings of Samuel Schuyler, against the Holland Trust Company and others, to have set aside, as fraudulent, certain transfers of steamboats made by Samuel Schuyler to the Schuyler Steam Towboat Company, and a trust deed mortgage, and the bonds secured thereby, executed by the Schuyler's Steam Towboat Company to the Holland Trust Company as trustee. The complaint was dismissed on the merits, and plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and HERRICK, MERWIN, and PUTNAM, JJ.

Lewis E. Carr and C. D. Hudson, for appellant.

George M. Van Hoesen, for respondents.

MERWIN, J. This action is in the nature of a creditors' bill, and was commenced on the 29th March, 1892, by the plaintiff, as representing several judgment creditors of Samuel Schuyler; all the judgments being based upon debts against Schuyler existing on and prior to December 8, 1890. In the complaint, divers transfers of property by Schuyler are set out, and alleged to have been made in fraud of creditors. Among other things, it is alleged that on and prior to December 8, 1890, Schuyler was the owner of five steamboats, known as the "Vanderbilt," "Syracuse," "Carrie," "Leonard," and "Wynants"; that on the 8th December, 1890, Schuyler, with intent to defraud his creditors, and without consideration, transferred these boats by bills of sale to the defendant the Schuyler Steam Towboat Company, a corporation organized under the law of this state on or about December 8, 1890; that on the 24th December, 1890, and as a part of a scheme to defraud the creditors of Schuyler, the defendant the Schuyler Steam Towboat Company gave to the defendant the Holland Trust Company a mortgage on

the five boats above named to secure the payment of certain bonds issued by the towboat company; and "that by reason of said mortgage the said defendant the Holland Trust Company pretended to loan to the Schuyler Steam Towboat Company the sum of $65,000, but no such sum, as matter of fact, was loaned or advanced to the Schuyler Steam Towboat Company. And, further, that said loan was fraudulent and void by reason of the receipt of a higher rate of interest thereon than that prescribed by law, and that said mortgage was given without consideration, and that the consideration that purported to have passed between said parties was inadequate, and that the fraudulent character of said transfer was known to the defendant the Holland Trust Company, and that the defendant the Holland Trust Company participated in said fraudulent transactions." It is also alleged that in August, 1891, Schuyler made a general assignment to the defendant Kirchway, which is alleged to be fraudulent and void as to creditors. None of the defendants defended, except the Holland Trust Company and Kirchway. By the judgment appealed from, the general assignment is set aside, and Kirchway does not appeal. As to the Holland Trust Company, the court decided that it was a mortgagee in good faith and for a valuable consideration, and that the cause of action alleged against it had not been established.

It appears that for many years prior to December, 1890, there had existed a corporation known as the Schuyler Steam Towboat Line. Its capital stock was $100,000, divided into shares of $100 each; and Schuyler was the owner of about 700 of the 1,000 shares, and he was the president of the company. It was engaged in the business of towing boats on the Hudson river, and its property consisted mainly of four steamboats and the good will of the business. Schuyler was himself the owner of five other boats, being those referred to in the complaint; and they had for many years been used in the business of the towboat line, and their earnings credited to Schuyler. Prior to December, 1890, the towboat line had become and was then indebted to divers parties other than Schuyler to the amount of about $125,000, which it was unable to meet and pay in the ordinary course of business, and its property was not sufficient to enable it to borrow sufficient money to meet and discharge its then pressing obligations. It was also indebted —in form, at least—to Schuyler to a considerable amount. It is not clear how much in fact this debt was. It was thereupon agreed between the officers of the towboat line and Mr. Schuyler that the latter should transfer to the line the steamboats owned by him, to enable it to borrow thereon, and on its own property, $150,000, to be used in the payment of the indebtedness of the line, other than that to Schuyler. In order to carry out this arrangement,— there being some difficulty in the way of the towboat line mortgaging its property, and its term of existence being soon to expire, —a new corporation, the Schuyler Steam Towboat Company, was formed, with practically the same stockholders and same directors; the stock in the old being surrendered for stock in the new company, and all of the property of the old company being transferred

to the new. Schuyler transferred to the new company his five boats, and subsequently surrendered or canceled the evidences of his debt against the old company. The new company assumed the payment of the debts of the old, and the indebtedness for the steamboats transferred to it by Schuyler, the amount of which does not appear, and subsequently, from money borrowed by it of the Holland Trust Company, paid $15,000, which Schuyler owed the trust company. No other consideration was paid to Schuyler by the new company for the transfer of the boats. Schuyler was at the time in debt or liable to an amount exceeding $80,000, and the property remaining to him after the transfer of the boats and the cancellation of his claims against the towboat line was insufficient to pay his indebtedness. It is not found that the transfer was made with intent to defraud creditors. He seems to have continued on in business until he made the general assignment to Kirchway, on August 4, 1891. On the 24th December, 1890, the towboat company, with the required consent of its stockholders, executed a mortgage on all the steamboats and the franchises of the company, including the good will of the business, to the Holland Trust Company, as mortgagee, in trust to secure the payment of $150,000 of bonds to be issued by the company. The trust was accepted by the trust company, and the bonds were issued, and offered for sale. Three thousand dollars were sold, and $2,000 additional were turned out to creditors in payment of their debts; and the balance, so far as made use of, were pledged as collateral to then existing indebtedness of the company, or for the loan to the trust company, hereinafter specified. In January, 1891, the trust company loaned to the towboat company $55,000, taking as collateral security therefor $100,000 of the bonds secured by the mortgage. From this loan the trust company received the sum of $15,000, the amount of a loan made by it to Schuyler prior to December 8, 1890, being the same hereinbefore referred to. The company continued its business in the usual way up to the 31st July, 1891, when a receiver of its property was appointed. In August, 1891, under the terms of the loan, the bonds held by the trust company were sold at auction for $20,000, the trust company being the purchaser. It also appears that on May 28, 1892, in proceedings in the United States court, six of the boats covered by the mortgage were sold at auction, three of which were of those transferred by Schuyler, and brought $26,000, and the other three brought $23,100. What has become of the other boats does not distinctly appear, or what was their value at the time the company failed. The towboat company is a party defendant, but does not defend. Its receiver is not a party, nor are any of the bondholders made parties, except the trust company. The claim of the plaintiff is that the transfer of the five boats from Schuyler to the towboat company was fraudulent as to Schuyler's creditors, and that the trust company is not in the position of a purchaser for a valuable consideration without previous notice of the fraud.

Under the allegations of the complaint, and the course of the trial, the main, if not the only, question is over the transaction by

which the bonds were taken by the trust company as collateral to its loan. The only rights that can be affected here are those of the trust company to the bonds it received. It is hardly claimed that the rights of other bondholders can be affected. So that if the trust company, as to the bonds it received, was entitled to the protection of the mortgage, the judgment should be affirmed. The plaintiff is not in a position here to investigate the rights of other parties, or provide for the marshaling of securities. The rights of the plaintiff in that respect will, we must assume, be fully protected elsewhere. It is not disputed that the loan was made by the trust company, and the bonds delivered at the time as collateral. Whether, as between the directors and the stockholders, the directors had a right to make the loan in exactly that form, is not material here to inquire. The plaintiff is not a stockholder or a creditor of the corporation, and seeks no rights as such. The corporation had the benefit of the loan, and in the payment of the $15,000 debt of Schuyler, which the trust company held, it may, upon the evidence, be assumed that so much was paid to Schuyler towards the consideration of the transfer of the boats by him to the company. The trust company gave up Schuyler's note and other collateral which it held, and at that time Schuyler was apparently solvent; at least, he was doing business. Murphy v. Briggs, 89 N. Y. 446. It seems to me very clear that the trust company was a purchaser for a valuable consideration. The burden then was on the plaintiff to show that the trust company had previous notice of the fraud, if any, of Schuyler in making the transfer to the towboat company. Starin v. Kelly, 88 N. Y. 418; 4 Rev. St. (8th Ed.) p. 2593, § 5. It is to be borne in mind that Schuyler owned 70 per cent. of the stock of the towboat company. So that, although he transferred the boats to the corporation, he still held a beneficial interest. He was also largely an indorser on the outstanding paper of the company. When the trust company took the bonds, the towing company was going on with its business in the usual way, and so continued to the following August. The officers of the trust company who negotiated the loan had no knowledge of the insolvency of Schuyler, or of the arrangement under which the boats were transferred. Even if the knowledge of Mr. Van Allen, a trustee of the trust company, who lived at Albany, was chargeable to the trust company, it falls short of notice of any intent by Schuyler to defraud his creditors, or notice of Schuyler's insolvency. But it is said that the trust company did not sufficiently inquire as to the title of the towboat company, and that it had constructive notice. It has, however, been held that a purchaser for a valuable consideration is not chargeable with constructive notice that the conveyance to him was made with intent to defraud creditors; that actual notice is required, to impair or affect his title. Stearns v. Gage, 79 N. Y. 102; Jacobs v. Morrison, 136 N. Y. 101, 32 N. E. 552. Applying this principle, we are of the opinion that the evidence fails to show notice to the trust company of any fraud in the transfer of the boats by Schuyler.

The plaintiff claims that the court erred, to his prejudice, in excluding as evidence generally in the case the judgment entered in this action upon the default of the other defendants, including the towboat company and Schuyler. It appears that a judgment by default against all the defendants was entered on the 26th July, 1892. On the 20th August, 1892, a stipulation in the action was made between the plaintiff's attorney and the attorney for the trust company, that this judgment, "so far as it relates or affects the defendant the Holland Trust Company, be reopened, and the default of said defendant" excused, with leave to answer on certain terms, "it being understood and agreed that nothing herein contained shall affect the rights of the plaintiff herein, as against any or all of the above-named defendants, except the defendant the Holland Trust Company, under and by virtue of the judgment." An order in accordance with the stipulation was duly entered. The point of the plaintiff is that the judgment was competent, as against the trust company, to show prima facie the fraudulent character of the transfer by Schuyler. It is a little difficult to see how this can be, in view of the stipulation and order that the judgment be reopened "so far as it relates to or affects the defendant the Holland Trust Company." It was found, at the request of the plaintiff, that such a judgment had been entered. It also appears that before this suit was commenced a receiver of the corporation was appointed. We fail to see in the ruling any error that calls for reversal. In the view we take of the case, we assume that, as between the plaintiff and Schuyler and the towboat company, the transfer may be invalid. That does not allow a recovery against the trust company, it being in the position of a purchaser for a valuable consideration without previous notice of the fraud.

There are no other questions that need be specially considered. We find no good ground for reversal. All concur.

Judgment affirmed, with costs.