.(23 App. Div. 94.)

### SWEENEY et al. v. COHEN et al.

(Supreme Court, Appellate Division, Second Department. December 14, 1897.)

FRAUDULENT CONVEYANCE—EVIDENCE.

　In a judgment creditor's action to set aside a conveyance by the judgment debtor as in fraud of creditors, any evidence bearing upon and tending to show that such a scheme was entered into, and corroborative of the testimony chiefly relied upon by the plaintiff, and denied by the defendants, is competent and material.

　Goodrich, P. J., and Bradley, J., dissenting.

Appeal from special term, Queens county.

Action by Elizabeth Sweeney and James J. Sweeney against Harris Cohen and others. From a judgment dismissing plaintiffs' complaint, they appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Abner C. Thomas, for appellants.
George P. Nock, for respondents.

HATCH, J. This action was brought to set aside a deed, made by the defendants Harris Cohen and Elizabeth, his wife, to Jacob Cohen,

upon the ground that the same was in fraud of the creditors of Harris Cohen.  Prior to November 4, 1889, one Morris Levy was the owner of a plot of ground at Rockaway.  He had theretofore contracted with the firm of Sweeney Bros. to erect thereon three houses, one of which, being the property affected by the present suit, it was contemplated would be conveyed to the defendant Harris Cohen. Upon completion of the houses, Levy failed to pay the whole amount of the contract price; and one Baldwin, a carpenter, who did the work under employment of Sweeney Bros., filed a mechanic's lien for $650, the amount of his claim.  On November 4th, Peter B. Sweeney, at the solicitation of Harris Cohen, released Levy from all liability upon his contract, procured Baldwin to cancel his lien, and, in substitution therefor, Harris Cohen gave to Sweeney his promissory notes, amounting in the aggregate, with those that had been previously given by Cohen, and which remained unpaid, to the sum of $3,722.70. Those notes were not paid at maturity, and judgments were obtained thereon, which form the basis of the present action.

The premises were conveyed by Levy to Harris Cohen on the 15th day of November, 1889, and the deed was recorded on the 29th.  On December 5th, in the same year, Harris Cohen and wife conveyed the premises to Jacob Cohen.  The deed was recorded December 10th. On the 9th day of December, 1889, suit was commenced by the service of a summons and complaint upon Harris Cohen, to recover the sum of $1,500, claimed to be due upon a promissory note held by one Israel.  On the next day, Cohen served an offer to allow judgment to be taken against him for the full amount of the claim, with interest and costs; and judgment for the amount of $1,520.09 was entered the next day, and execution issued thereon.  At this time, and for a long period of time prior thereto, Harris Cohen had carried on a prosperous clothing business at the corner of White and Baxter streets, in the city of New York.  He had a large stock of goods, worth several thousands of dollars, and no one seems to have regarded him as in failing circumstances.  The execution upon the Israel judgment was immediately levied upon this stock of goods, but not soon enough to forestall a writ of replevin sued out by one Levy, as claimed, at the instance of Harris Cohen, under which seizure of a large amount of the property was made, and there was only realized upon the execution sale of the property left the sum of $534.34.  This, in brief, is the net result of Harris Cohen's operations for the months of November and December.  He has ever since continued to reside in the house conveyed to Jacob, with his family; and, a few days after the sale of his stock, the store was opened, and the business conducted in his wife's name, and he has managed the business with the same clerks as before.  Rouse, a witness for plaintiffs, testified that the goods which Cohen had "there before came back there after awhile"; and Cohen did not deny the statement upon the stand.  The learned counsel for the respondents very frankly admits in his brief that Harris Cohen was undoubtedly "engaged in an attempt to defeat his creditors generally,"—a statement which accords with my own view. This, however, as is claimed, would not be sufficient to defeat the sale of this property to Jacob Cohen if he paid full value for the same,

and bought without knowledge or notice of the fraudulent intent of his grantor.

We come, therefore, to a consideration of what the case really is, as disclosed by the testimony given upon the trial, and may then fairly examine the disposition made of the case by the court, and consider its rulings in the examination of the testimony, and in rejecting evidence offered by the plaintiffs. The complaint avers that the transfer of the property was made to Jacob, without his paying therefor a valuable consideration, and in pursuance of a scheme by Harris Cohen to hinder, delay, and defraud his creditors, and that Jacob participated therein, and had full knowledge and notice of· it. Callman Rouse testified that in August, 1889, it was mentioned to him, in the presence of Jacob Cohen, that Harris intended to fail; that he was sent for, and met Jacob and Harris Cohen and Morris Levy; that Harris said he had got to fail, and the worst thing was to get the goods out of the store without the neighbors noticing it; that Rouse advised that the goods should be sent out to spongers, and carried to Jacob's store, who was also in the clothing business. The next day Rouse was called to Jacob's store, and showed some goods by Jacob, which had come from the Harris Cohen store. Other methods of removing the goods were also adopted, and witness spoke with Jacob about it. Finally the three men above mentioned visited a firm of lawyers, and it was there agreed that, in consideration of $600 which the witness was to hold for payment to the lawyers, as guaranty of good faith on Harris Cohen's part, the Israel judgment was to be obtained by a friendly lawyer, already retained, and who had brought that action, and, when that was done, a writ of replevin was to be sued out, and most of the goods taken by that process before the execution upon the judgment was levied. In addition, supplementary proceedings were to be instituted through another attorney. The witness also testified that Harris Cohen related the transaction by which he had induced Sweeney to take his notes for the real property and release the lien thereon, so that he could make good title to the property; that this conversation took place in November, in the presence of Morris Levy and Jacob Cohen; that the latter laughed about it; and that all regarded it as a very smart business transaction. The oral statements made by Rouse were denied by Jacob and Harris Cohen. Morris Levy was not called as a witness. The testimony of Jacob Cohen tended to establish that he knew nothing of any of the transactions testified to by Rouse; that on July 5, 1889, he loaned Harris Cohen $2,000 in money, for which he took his note, due in five months after date, and that on the 25th of the same month he loaned him $1,500, for which he took his note, due four months after date; that, at the time when he purchased the premises, he gave Harris a certified check for $650, and surrendered up the two notes; and that this constituted the consideration for the property. The notes and check were produced upon the trial, and read in evidence. The transaction respecting the giving of the notes was purposely kept a secret between Jacob and Harris Cohen. It consisted, according to the statement of Jacob, in Harris applying to him for a loan of the respective sums, in his going to his safe, where he kept

his rent moneys, and handing him out the amount.    Jacob was a man of large means, although he could not read or write.    His daughter was his bookkeeper, and he states that as he then contemplated a matrimonial alliance with the daughter of Harris, to which his children were not kindly disposed, he did not wish them to know of these loans, and so no entry was made of them.    As Jacob could not read or write, and Harris could only sign his name, and no one else knew of the transaction, the production of the notes by the two may be regarded as partaking of the nature of a miracle.    Jacob also claimed to have leased the house to the wife of Harris Cohen, she to pay him as rent the interest upon the money invested and the taxes. This was an oral arrangement, and seems never to have been carried out, as all the money Jacob has received as rent does not exceed $115.    And according to his statement, supported in some instances by checks which are produced, he has paid in taxes, and to prevent the foreclosure of a mortgage, a much larger sum than he has received. Harris Cohen supports Jacob's testimony in respect of the notes and the bona fides of the transaction.    But it is quite evident that his course in the matter and the transactions in which he had been engaged made for him a very tortuous passage in giving testimony. His statements are in many respects obscure, uncertain, incomplete, hesitating, contradictory, and as a whole quite unsatisfactory.    He admits, however, that he went to the lawyers with Rouse, although he claims that Rouse compelled him to go, and he could not help himself.    He swears that Rouse got $600, which he yet owes him.    He then swears that he had to give Rouse $600, but for what purpose he did not know.    He did not know whether he owed the lawyers anything or not.    After avoiding a direct answer to several questions, as to whether he directed Rouse to pay the lawyers the sum of $300, he positively denied it.    When presented with a written order authorizing Rouse to pay the lawyers $300 for "services and outlays in the matter of Mr. Cohen," signed by him, he could not tell whether it was his signature or not, and declined to answer one way or the other.    When the paper itself was offered in evidence, the court excluded it as immaterial.

We need not further pursue in detail the evidence.    The foregoing is its substance upon this branch of the case.    These witnesses were all subject to the ban of interest,—Rouse for his animosity towards Jacob Cohen; Jacob Cohen because of his interest in the property and his relation to Harris.    By a former marriage with the latter's sister, he became his brother-in-law.    By his second marriage with his daughter, he became his son-in-law.    Upon the evidence it was undoubtedly competent for the court to direct the judgment which it did, as it is not without evidence for its support, and we may not disturb it for that reason.    But the learned court based his ruling in dismissing the complaint, in part at least, upon the assumed fact that the testimony of Rouse was uncorroborated.    This assumption was only true as respects oral statements.    In matter of circumstance, corroboration of the testimony of Rouse was not lacking.    The details of the transaction by which Harris Cohen procured his property to be seized by friendly creditors was carried out as detailed by

Rouse, and in harmony with the plan which Rouse said was made. This was corroboration of a substantial character. In addition to this, the statement of Harris Cohen and Levy, as to the means used to induce Sweeney to release Levy, and clear up the real property, was in substantial accord with the plaintiffs' and Baldwin's testimony upon that subject; and it does not appear that Rouse had any relation with either, or that he heard of the transaction other than from Harris Cohen and Levy. In addition to this existed the undisputed fact that Harris Cohen had a large establishment, and a large stock of goods, employing 15 or more clerks. His business was prosperous, to all outward appearances. Jacob Cohen supposed him to be a wealthy man. In the face of these circumstances, he suddenly fails; his property is disposed of, so that but a small sum is realized to apply upon any claim against him; his real property goes to his relative; and the means used by which this result is accomplished was detailed by Rouse as the scheme made prior thereto. It may not therefore be asserted that there was no corroboration of the testimony of Rouse. It may be that this would not be sufficient to call for a reversal of the judgment, taken in connection with the fact that the court could have disbelieved and rejected the testimony of Rouse entirely; and it is not entirely clear that he did not do so. I do not determine the question. Rather have I pointed it out to show that, in excluding the order made by Harris Cohen to Rouse to pay his lawyers, an error fatal to the judgment was committed. The scheme of Harris Cohen to fail, assuming it to have existed, for the purpose of cheating his creditors, required, of necessity, the disposition of his whole property, both real and personal. This was essential to the accomplishment of his purpose. Both real and personal property was disposed of as practically contemporaneous acts. Any evidence, therefore, which bore upon and tended to show that a scheme was entered into, became competent and material testimony. Rouse testified to the existence of a conspiracy, and the court held that his testimony and the facts appearing at the close of plaintiffs' case called upon the defendants to give proof. This condition of the case authorized the reception in evidence of any act which the parties charged with entering into the conspiracy had done in furtherance of it or in connection with it. When, therefore, the written evidence of Harris Cohen's connection with the conspiracy was made to appear in connection with the testimony of Rouse, it became admissible for the purpose of showing such connection and characterizing it, and also for the purpose of corroborating Rouse. As we have seen, Rouse testified that he held the money to pay the lawyers employed by Cohen. This was denied by Harris Cohen, and the fact that the latter subsequently directed Rouse to pay over money to the lawyers was not only evidence, but practically conclusive evidence, that Rouse not only held the money, but that he held it for the purpose for which he said he did. It was also admissible against Jacob Cohen. Harris Cohen had been called for the purpose of showing the bona fides of the sale to Jacob. The case in this respect rested upon the testimony of Harris, as well as Jacob, Cohen. Anything, therefore, which went to the destruction of his testimony, was admissible

upon the issue of credibility thus raised. If the court found that Harris Cohen did in fact deliver the money to Rouse, as required by the lawyers which he employed, it might well have found that there existed the scheme, participated in by Jacob, to aid and assist Harris to defraud his creditors. Such testimony tended to the destruction of Harris Cohen's testimony, and furnished strong corroborating testimony of the truthfulness of Rouse; and, had the court received it, there might have been found sufficient strength therein, in connection with the other testimony, from which to conclude that the sale to Jacob was fraudulent to his knowledge.

For these reasons, expressed at much greater length than I had intended, the judgment should be reversed, and a new trial granted, with costs to abide the final award of costs.

CULLEN and BARTLETT, JJ., concur.

GOODRICH, P. J. (dissenting). The action is brought to set aside the conveyance of a house and land at Rockaway, made in 1889, by Harris Cohen to Jacob Cohen, who afterwards became his son-in-law. The plaintiffs claim that the deed was the result of a fraudulent conspiracy between the two Cohens, and was executed by Harris Cohen when he was insolvent, without any valuable consideration paid by Jacob Cohen, for the mere purpose of hindering, delaying, and defrauding the creditors of Harris, and as a part of a scheme and device to defraud his creditors, in which fraud Jacob participated, and of which he had full knowledge. I assume that the testimony clearly shows a fraudulent intent on the part of Harris to hinder, delay, and defraud his creditors; but a fraudulent intent on the part of Jacob, or some active participation by him in the alleged conspiracy, or, at least, notice which would compel his inquiry, is equally requisite with a fraudulent intent on the part of Harris. Both must co-exist to sustain an action of this character. A failing debtor, in pursuance of a positive intention to cheat his creditors, may dispose of his property for a valuable consideration, where the consideration approximates the fair value of the property, to a stranger to his intention, who has no knowledge or notice of the fraudulent intent; and such transfer will be sustained. Any other doctrine would be fatal to the rights of innocent purchasers. Such is the unquestioned doctrine of the authorities. Laidlaw v. Gilmore, 56 N. Y. 621; Zoeller v. Riley, 100 N. Y. 102, 2 N. E. 388. It is true that the payment of a fair consideration upon a sale of property is not conclusive evidence of the good faith of the purchaser, but it affords strong evidence thereof, and requires clear proof of a fraudulent intent on the part of the vendee in order to overcome the presumption of honest motives. Starin v. Kelly, 88 N. Y. 418; Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; Nugent v. Jacobs, 103 N. Y. 125, 8 N. E. 367.

With these principles in view, the learned justice at special term, who had before him the parties to the alleged fraudulent transaction, after a patient and painstaking hearing, with the benefit of the "per-

sonal equation" involved in the appearance of the witnesses and their manner of giving evidence, and the testimony as to the character of the principal and uncorroborated witness for the plaintiff, who cheerfully and willingly testified as to his participation in a fraudulent conspiracy with Harris Cohen to cheat his creditors, came to the conclusion that Jacob Cohen was not participant in any conspiracy or fraud, that he had no notice of any fraudulent intent on the part of Harris, and that he paid full value for the property. It is no part of our duty to disagree with these findings, unless the testimony was inadequate to support the decision of the learned justice, and I cannot fail, after an elaborate examination of the evidence, to concur in his judgment. It makes no difference that the parties are closely related. The reasons and circumstances detailed by Jacob seem to afford an adequate reason for his purchase. Neither is it important that a part of the consideration, some $3,500, was for an antecedent indebtedness of Harris to Jacob. There is no evidence impeaching the existence of this indebtedness, and the balance of the purchase money was paid in a check which was received by Harris, deposited in his bank, and paid by the bank on which it was drawn. That Jacob has permitted his father-in-law and family to occupy the house under lease might be considered a significant fact if the evidence did not also disclose the manifold difficulties which seem to have arisen between them as to the collection of the rent, and that on more than one occasion Jacob was compelled to pay money for the wrongful acts or neglect of his father-in-law, once in payment of interest on the mortgage, which resulted in a suit for foreclosure. I think the learned justice at special term came to a correct conclusion upon all the evidence, and that his finding of the facts should not be disturbed.

There is one exception, however, which requires mention. Harris, on cross-examination, had been questioned by the plaintiffs' counsel as to the payment by him of a sum of money to a firm of attorneys which was bringing what was claimed to be a collusive suit by one of his creditors, against him and at his own instigation, for the purpose of seizing his stock in trade, and preventing it from coming into the hands of other creditors. He had either denied it, or had been unwilling to answer fairly the questions designed to prove the fact, and the plaintiffs' counsel offered in evidence a paper signed by him in which he had authorized the payment. The admission of this paper might have strengthened the proof of Harris' fraud, but that fraud I have assumed to be proven, and I cannot see how it could affect Jacob, who was not a party to the incident, and who was not in any way connected with it. There was no offer to connect Jacob Cohen with the transaction, and, although it would have afforded proof of contemporaneous fraud on the part of Harris, it would not, under my view of Jacob's position, have affected him. It was a transaction between Harris and his co-conspirator, and cannot affect Jacob, even though it may be proof of the fraudulent intent of Harris; so that the result of the trial was not affected thereby, for there is the broad gulf between the plaintiffs' claim and the defendant Jacob still

unabridged by the evidence, as the court has found that Jacob was not a participant in any fraud.

There are no other exceptions which affect the result, and I think the judgment should be affirmed.

BRADLEY, J., concurs.