E. W. BLISS COMPANY, Appellant, *v.* PROGRESSIVE SMELTING AND METAL CORPORATION and Another, Respondents.

First Department, March 7, 1924.

Fraudulent conveyances — action by judgment creditor to set aside conveyance by debtor corporation to new corporation — judgment credtor was offered all remaining equity in real estate of debtor corporation but refused — transfer was made openly and for full consideration and will not be set aside.

A conveyance by a debtor corporation of its real property to a new corporation organized for the purpose of taking over the assets of the debtor corporation will not be set aside in an action by a judgment creditor on the ground that the transfer was made with the intent to hinder, delay and defraud the creditors of the debtor corporation, where it appears that the judgment creditor was offered all of the equity in the real estate of the debtor corporation but refused to take the same; that the principal owner of the debtor corporation made other efforts to pay the creditor's claim and fully informed it of the organization of the new corporation and of the intention to transfer the assets of the old corporation to the new; and that the new corporation paid in money, and mortgages assumed, the full value of the real estate of the debtor corporation.

APPEAL by the plaintiff, E. W. Bliss Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 9th day of July, 1923, dismissing the complaint on the merits upon the decision of the court rendered after a trial at the New York Special Term.

*Edward T. Horwill* [*Carl Stedman Brown* of counsel; *Arnold M. Schmidt* with him on the brief], for the appellant.

*Lorenz & Lorenz* [*Joseph Lorenz* of counsel], for the respondents.

MERRELL, J.:

The judgment appealed from herein dismisses the plaintiff's complaint upon the merits, with costs.

The action was brought by the plaintiff, a judgment creditor of the defendant Progressive Smelting and Metal Corporation, to set aside a transfer by said defendant of its real property made on or about January 13, 1921, to the defendant General Metal and Copper Corporation. The last named defendant was organized by the president of the defendant Progressive Smelting and Metal Corporation for the purpose of taking over the assets of said corporation at about the time of said transfer. It is the contention of the plaintiff that such transfer was made with intent to hinder, delay and defraud the creditors of the defendant Progressive Smelting and Metal Corporation, and particularly for the purpose of cheating and defrauding said plaintiff.

The facts in the case are quite unusual. Shortly before the transfers in question it became evident that the defendant Progressive Smelting and Metal Corporation was hopelessly involved financially and was unable to pay its debts promptly and in full. At that time it was indebted to various creditors in an aggregate amount of over $270,000. Its real property, the subject of this action, was mortgaged to the extent of over $42,000, which mortgage was past due and default had been made in paying the interest thereon and the same was in process of foreclosure. Indeed, the defendant had made default, and entry of judgment was only held up by way of grace by the mortgagee. This real property of the defendant was substantially its only assets. There were also liens by way of accrued interest on said mortgage and unpaid State and city taxes and judgments aggregating over $12,000 more which were liens upon said property. Moreover, action had been brought and judgment was due upon the claim of another creditor which upon docketing and entry thereof would have been a lien upon said property to an amount of about $10,000, but which was being held off to avoid throwing the debtor into bankruptcy. In this situation the plaintiff was insisting upon liquidation of its claim. The president of the defendant Progressive Smelting and Metal Corporation was one Lawrence Donahue, and he practically owned the corporation. He went to the plaintiff's officers, who were claiming that plaintiff's claim aggregated $29,000, and insisted to them that there were offsets to their claim growing out of faulty goods furnished the Progressive Smelting and Metal Corporation to the amount of substantially $9,000, and sufficient to reduce their claim to something less than $20,000. Donahue testified that they acceded to that reduction. Plaintiff's officials deny that they ever acceded to such claim of the defendant's president. However, a disinterested witness, the attorney for another creditor, testified that in a talk which he had with plaintiff's officers with a view of attempting

to effect a compromise in adjustment of plaintiff's claim and thus avoid a disaster which would affect his client, he stated to plaintiff's officials that there was to be as he understood a deduction of their claim so that the net amount to them would be only about $20,000, and that said officials did not dispute such assertion.

On that point the court at Special Term resolved the question of fact in favor of the defendant. Donahue testifies and it is admitted by the officials and attorney for the plaintiff that upon obtaining their consent to the reduction of their claim by the allowance of the claimed offsets thereto he offered then to give them a second mortgage upon the property of the defendant for $15,000 and his own individual note for $5,000 in settlement of their claim, but that the plaintiff's officers declined such offer. It thus appears that Donahue, who is now accused of dishonesty and an effort to hinder, delay and defraud the plaintiff, offered to the plaintiff every equity which his company had in this real estate. This certainly did not look as though he was seeking to cheat or defraud the plaintiff judgment creditor. The plaintiff insisted that Donahue turn over to it certain real estate properties and lots in Westchester county owned by a corporation which he controlled, and it was finally agreed that he should dispose of said lots and from the avails thereof, by way of purchase-money mortgages given by purchasers, he should turn over to the plaintiff $20,000 in settlement of their claim. The evidence shows that Donahue at once undertook to comply with plaintiff's demands in this respect. The Westchester lots were advertised extensively for sale, were placed in the hands of real estate agents, and every effort made to dispose of them to good advantage. Owing to depressed business conditions at the time, the lots were sold at a sacrifice, the net result being that it became necessary for Donahue to himself put up additional funds to pay the combined commissions of his agents and expenses attending the disposition of the lots in addition to the amount received therefrom. Plaintiff was informed of the failure of his efforts in this respect, and was again offered a second mortgage on the property of the said defendant for $20,000, but this plaintiff declined on the ground that the equity was not worth that sum. Thereupon Donahue went to the plaintiff's officers and told them that his company could no longer endure or do business, and that it was necessary for him to do something. He told them of his efforts to raise money of different people and in particular of Bloomingdale & Co., who were themselves heavy creditors, and that they had refused to advance further moneys and had refused even to accept a second mortgage upon the properties in security for their debt. He then told the plaintiff's officers

of his plan to start anew by forming a new corporation, the defendant General Metal and Copper Corporation, and to turn over to it upon adequate consideration the property of the Progressive Corporation, and that plaintiff would be given a mortgage on the property of the new corporation. He was told by the plaintiff's officials to go ahead and see what he could do. Donahue did go ahead and organized the new corporation. The transfer was made and the new corporation was organized and its stock issued. Donahue's wife borrowed of Bloomingdale & Co. $11,000 which she turned in to the new corporation and received stock in the new corporation therefor. Donahue's sister-in-law, Mrs. Mary Caren, furnished $4,000 to the enterprise, making in all $15,000 in cash which was paid in. This $15,000 was paid over by the new company to the Progressive Smelting and Metal Corporation in payment for said transfer and was disbursed among the pressing creditors of said debtor corporation. In addition the new corporation gave to the Progressive Smelting and Metal Corporation a purchase-money mortgage for $15,000. At once Donahue offered to turn over to the plaintiff the purchase-money mortgage executed by the new company, which the plaintiff refused to receive. There was thus paid a consideration by the new company for the transfer of the assets of the old company a total consideration of over $84,000. This was made up of the amount due upon the mortgage being foreclosed, the arrears of interest and taxes, the $15,000 cash paid and the purchase-money mortgage for a like amount. The evidence conclusively shows that such consideration was full and ample consideration for the transfer which was made. In the meantime judgment was obtained by the plaintiff against the defendant Progressive Smelting and Metal Corporation for substantially $30,000, the full amount of its claim. This judgment was obtained by default which occurred by reason of the illness of Donahue. On January 25, 1921, a meeting of the creditors was called to approve and ratify the assignment of the $15,000 purchase-money mortgage to the plaintiff, Donahue assuming that plaintiff would accede to the plan which he had outlined to it. Substantially all of the creditors were represented at such meeting, and duly approved of such plan. Plaintiff was represented by attorney at said meeting, who counseled the withholding of bankruptcy proceedings by any creditor. Notwithstanding the agreement of the creditors and their assent to the plan which Donahue was attempting to carry out to save his company, the plaintiff flatly refused the offer of the purchase-money mortgage and insisted upon a payment in full. This the debtor corporation could not do. Thereupon the present action was brought to set aside the transfer of the property from

the Progressive Corporation to the General Metal and Copper Corporation as fraudulent, the plaintiff alleging that the same was made and received with intent to hinder, delay and defraud the creditors of the said defendant. It appears that since said transfer was made the affairs of the new corporation have prospered and they have been able to make substantial payments upon the said mortgage upon their property and in discharge of tax liens thereon. Considerable improvements have been made and apparently the new corporation is in a fairly prosperous condition.

In its decision the learned court at Special Term held that the total debts of the Progressive Smelting and Metal Corporation up to January 10, 1921, just before the transfer was made, amounted to $275,000, and that said company had no assets with which to pay the same except its said real property; that the plaintiff was asserting claims against said defendant aggregating approximately $29,000, and in May, 1920, had commenced action thereon. The court held that the said defendant had counterclaims to such claims of the plaintiff which it and its officers believed to be valid and which reduced the plaintiff's claim to $19,907.96, and that said counterclaims were interposed in good faith as defenses to the actions brought by the plaintiff; that in June, 1920, and at various times thereafter the plaintiff expressed its willingness to accept the sum of $20,000 in full settlement of its claim and was willing to accept in full settlement of its claim sound purchase-money mortgages in said sum of $20,000 upon the Westchester county lots controlled by the president of the Progressive Corporation. The court further held that on November 17, 1920, an attempt was made to sell such lots and that such sale resulted in a deficit which was met by personal funds of Donahue. The court also found the facts as to the organization of the new company, the consideration paid the debtor corporation for its real estate, the manner in which the money was raised, and other facts, substantially as hereinbefore stated. The court also found as a fact that the General Metal and Copper Corporation received the property of the debtor corporation without any intent to hinder, delay or defraud the creditors of the Progressive Corporation or any of them, and that the consideration paid by the General Metal and Copper Corporation for said real property was valuable and adequate.

As conclusions of law, the court found that said conveyance was a valid and proper transfer made without intent to hinder, delay or defraud the creditors of the Progressive Corporation or any of them, and that the General Metal and Copper Corporation received such property without intent to hinder, delay or defraud the creditors of said Progressive Corporation or any of them. The court ordered

a dismissal of the complaint, with costs, and judgment was entered accordingly.

We are convinced, from an examination of this case, that we should affirm the judgment of the equity court. One cannot read the evidence without being impressed with the entire honesty of purpose of Donahue and with the great unfairness of the plaintiff. The plaintiff was not the chief creditor of the insolvent defendant, but only a comparatively minor one. The other creditors were willing to do anything within their power to enable the defendant to continue its business. The plaintiff was seeking all the time an unfair preference and advantage over the other creditors. Donahue exerted every effort to avoid bankruptcy of his company. The final reorganization that was made and the transfer to the new company was made openly with the knowledge and at least the tacit consent of the plaintiff. The plaintiff was offered all of the equity which the debtor corporation had in its real estate and refused the same. It comes into a court of equity with unclean hands, having manifested an unwillingness to do equity. (*Security Bank* v. *Geoghegan,* 174 App. Div. 195; *Mallouk* v. *American Exchange Nat. Bank,* 157 id. 711; affd., 216 N. Y. 670.)

No reasonable person after examining the evidence and facts in this case, can come to the conclusion that there was any intent on the part of Donahue to hinder, delay or defraud his creditors in any way, but on the other hand it would seem that he treated them, and especially the plaintiff, with the utmost consideration.

The evidence is clear and convincing that adequate consideration was paid the debtor corporation for its property and this fact, unassailed, furnishes the strongest proof possible of the honesty and good faith of the transaction, and overcomes any presumption of fraud arising from the transfer under circumstances which at first blush might give rise to suspicions as to its honesty of purpose. (*Wallach* v. *Baumryter,* 170 App. Div. 618; affd., 224 N. Y. 652; *Bogert* v. *Hess,* 50 App. Div. 253; *Starin* v. *Kelly,* 88 N. Y. 418.)

In Bigelow on Fraudulent Conveyances it is stated (p. 182) that in cases of conveyances made for valuable consideration, such conveyances, if made in good faith and without intent to defraud, will be upheld. At page 183 the same author says: " It is certainly a difficult matter to make a case against a purchaser for value, especially for full value; and it well should be, for the debtor has still the right to sell his property, and the creditor has still his resort to the substituted property. It is no delay in law that he cannot reach the property sold."

The burden of proof was upon the plaintiff to show that the transfer in suit was fraudulent, and that it was made with the intent

to hinder, delay and defraud the creditors of the debtor corporation. If the proven facts are consistent with an honest purpose the plaintiff has failed to bear such burden. We think the evidence, taken as a whole, conclusively shows that said transfer was open and above board and free from any dishonest intent on the part of the debtor or its president, Donahue. (*Nugent* v. *Jacobs*, 103 N. Y. 125.) In the case cited Chief Judge Ruger, writing for the Court of Appeals, said: " The payment by the purchaser of a fair consideration upon a sale of property affords strong evidence of the good faith of the transaction, and while not conclusive upon that question requires clear evidence of the existence of a fraudulent intent to overcome the presumption of honest motives, arising from that fact."

Full and adequate consideration furnished for the transfer is the outstanding and redeeming feature of the transaction involved in this action, and the favorable presumption arising therefrom has not been overcome by plaintiff's proofs. While there were some disputed questions of fact presented by the evidence, the trial court resolved the same in defendant's favor.

We think the complaint was properly dismissed upon the merits, and that the judgment appealed from should be affirmed, with costs.

Clarke, P. J., Smith, Finch and Martin, JJ., concur.

Judgment affirmed, with costs.